584 F.2d 953
 Application of William BALDWIN for Appointment of Counsel,
William Baldwin, Appellant,
and
John M. Espinoza, Petitioner-Appellant,
v.
Charles L. BENSON, Warden, United States Penitentiary,
Leavenworth, Kansas, United States Parole Commission,
Griffin B. Bell, Attorney General of the United States, and
United States Bureau of Prisons, Respondents-Appellees.
 Nos. 77-1739, 77-1794.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 28, 1978.
 
 Clayton D. Knowles, Denver, Colo., for appellant.
 Leonard D. Munker, Federal Public Defender, on brief, for petitioner-appellant John M. Espinoza.
 Roger M. Theis, Asst. U. S. Atty., Topeka, Kan. (James P. Buchele, U. S. Atty., Topeka, Kan., on brief), for respondents-appellees.
 Before SETH, Chief Judge, and HOLLOWAY, McWILLIAMS, BARRETT, DOYLE, McKAY and LOGAN, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 The question here presented is whether a person who is charged with violation of parole is entitled, as a matter of right, to appointed counsel in parole revocation proceedings before both the Commission and court, under 18 U.S.C. § 4214. Both of these defendants have been charged with parole violation and in the applicable proceedings have had parole revoked following hearings in both cases. This is the only question raised in the appeal of William Baldwin.
 
 
 2
 The case of John M. Espinoza is an appeal from the denial of a petition for writ of habeas corpus which raised other points besides the right of counsel. Both appellants have been in the United States Penitentiary at Leavenworth, Kansas, and the prior court proceedings from which the appeals are taken occurred in the United States District Court for the District of Kansas.
 
 BALDWIN PROCEEDINGS
 
 3
 William Baldwin was originally convicted of bank robbery and was sentenced to 18 years in prison. He commenced serving his sentence on February 20, 1967, and was released on parole May 15, 1974. He originated in Connecticut and was supervised in that district. His offense was theft, on November 19, 1976, of $1,154.00 from a retail shop in Manchester, Connecticut. He pleaded nolo contendere to this on April 20, 1977, and was fined $250.00. On April 28, 1977, a parole revocation warrant was issued for Baldwin and this was executed on May 2, at which time he was arrested and placed in the Correctional Center at Hartford, Connecticut, without preliminary hearing on revocation. Thereafter, he was transferred to Leavenworth, where the parole revocation hearing took place. In connection with the parole violation proceeding, he requested the appointment of counsel. The case is entitled: In the Matter of the Application of William Baldwin for the Appointment of Counsel. On June 10, 1977, a memorandum was filed by Judge Arthur J. Stanley, Jr., denying the request for counsel. Baldwin's request for rehearing was also denied July 19, 1977. The validity of the order denying counsel is before us on appeal.
 
 ESPINOZA PROCEEDINGS
 
 4
 Espinoza's conviction was bank robbery. Following conviction on March 29, 1966, he was sentenced to 15 years in prison. Release on parole was on April 15, 1971. On August 12, 1976, however, he was arrested on a parole violation warrant. Following his being held in custody at a number of federal institutions, he was finally transferred to the Federal Penitentiary at Leavenworth, Kansas. There he was charged with parole violation for having allegedly committed (1) assault and battery in June 1972, to which he pled guilty on September 14, 1972, at San Jose, California; (2) two drunk driving charges, one in September 1972, and the other in November 1972, to both of which he pled guilty. Since these were misdemeanors, it was not considered that they were sufficiently serious to require parole revocation. On March 1, 1976, he was arrested in San Jose and charged with receiving stolen property and grand theft. He entered a plea of nolo contendere on June 2, 1976 to two counts of receiving stolen property. It was understood that these would be reduced to misdemeanors. On July 1, 1976, he was sentenced to 90 days in the county jail. On August 12, 1976, he was arrested for violation of federal parole. Here again there was no preliminary revocation hearing held. Prior to the hearing on the violation of parole, he requested the appointment of counsel to assist him at the revocation hearing. However, this was denied, as shown by the memorandum of Judge Stanley, filed November 23, 1976. Subsequently, there was a hearing on the revocation and parole was revoked December 22, 1976. In June 1977, Espinoza requested that counsel be appointed to aid him in a habeas corpus proceeding. The Federal Public Defender's office from Kansas was appointed to represent him. The proceeding was entitled: John M. Espinoza v. Charles L. Benson, Warden, etc., et al., No. 77-3187. The petition for habeas corpus was filed with the aid of the Public Defender's office. This challenged the parole revocation on a number of grounds including the failure to appoint counsel for the revocation hearing. The petition for permanent writ was denied August 16, 1977, by Judge Richard D. Rodgers. Thereafter, notice of appeal was filed, and an order was entered allowing the appeal on August 31, 1977.
 
 THE DISTRICT COURT DECISION
 
 5
 The trial court held that notwithstanding adoption by the Congress of 18 U.S.C. § 4214, that the appointment of counsel in a revocation proceeding continues to be within the discretion of the trial judge. The reason given was that the provision of the Parole Act which provides that counsel shall be provided adds the statement "pursuant to 18 U.S.C.A. § 3006A." The trial court said the term "pursuant to" (in § 4214) means "in accordance with." "The language of subsection (g) of 18 U.S.C. § 3006A is clear and unambiguous in providing the appointment of counsel for a person subject to revocation of parole when the court determines that the interests of justice so require."
 
 
 6
 The court cited the pre-Parole Act decisions of the Supreme Court, Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and Morrissey v. Brewer, 408 U.S. 471, 490, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). These cases were, of course, decided in the context of § 3006A(g), which expressly authorized the exercise of discretion in appointment of counsel. The conclusion was that the interest of justice did not call for appointment of counsel in the instant case.
 
 I.
 
 7
 Before the enactment of the Parole Commission and Reorganization Act, which is commonly referred to as the Parole Act, the appointment of counsel in revocation proceedings was left to the discretion of the court or magistrate having jurisdiction of the case. See 18 U.S.C. § 3006A. The government contends that the discretionary aspect continues under the new law. One reason for this is that the court decisions have shown reluctance toward appointing counsel in parole revocation proceedings.
 
 
 8
 The Supreme Court has held, however, that the Sixth and the Fourteenth Amendments require the state and the federal government to appoint counsel for indigents accused of crime. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), which requires appointment of counsel for an indigent defendant at every stage of a criminal proceeding which involves substantial rights. But the Supreme Court in Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), ruled that parole revocation is not part of a criminal prosecution so as to require the appointment of counsel in these proceedings. The reasoning was that it deprived the parolee of less than the absolute liberty enjoyed by every citizen and it deprived him of only the conditional liberty dependent on observance of special parole restrictions. Morrissey did not decide the question whether the parolee is entitled to the assistance of counsel if he is indigent. The present law was enacted subsequent to Morrissey v. Brewer, supra. It was in that background that the Parole Act was adopted. Although it refers generally to § 3006A of the Criminal Justice Act, it provides that for those who are financially unable to hire counsel, counsel shall be provided pursuant to the Criminal Justice Act. Consistent with this, the Act specifically lists and enumerates the rights of the parolee, procedural and substantive, including the right to counsel at preliminary revocation proceedings as well as final ones.
 
 
 9
 The Supreme Court's most recent decision in this general subject area, Moody v. Daggett, 429 U.S. 78, 84-85, 97 S.Ct. 274, 277, 50 L.Ed.2d 236 (1976), through the Chief Justice, commented on the right to counsel under § 4214(b)(1) and recognized the right to counsel under that related section by stating that the parolee is entitled to assistance of appointed counsel if requested. It was there said:
 
 
 10
 The 1976 Act and accompanying regulations, (28 CFR § 2.1 Et seq.) (1976), incorporate the former procedures with few modifications. Under current law, the Parole Commission reviews the parole violator warrant within 180 days of its issuance, 18 U.S.C.A. § 4214(b)(1) (June 1976 Supp.); the parolee, after notification of the impending review, Is now entitled to assistance of appointed counsel, if requested, in preparing his written response. 18 U.S.C.A. § 4214(b)(1), (a)(2)(B) (June 1976 Supp.). The 1976 Act also abolishes the annual status review formerly required. Previously it was general practice to defer execution of the warrant to completion of the subsequent sentence. It is now firm Commission policy that unless "substantial mitigating circumstances" are shown, the parole violator term of a parolee convicted of crime is to run consecutively to the sentence imposed for the subsequent offense. 28 CFR § 2.47(c) (1976). (Emphasis supplied).
 
 II.
 
 11
 The legislative history of the Act shows that the Congressional intent was to provide counsel in all revocation proceedings unless the parolee waives such right. The House Conference Committee stated on page 34 of the Conference Report, Reprinted in (1976) U.S.Code Cong. & Admin.News, pp. 351, 366, that "both the preliminary and revocation hearing shall be conducted in accordance with the following procedures":
 
 
 12
 (b) the right to be represented by retained counsel or if he is unable to retain counsel, counsel shall be provided pursuant to the Criminal Justice Act (18 U.S.C. 3006A) or another representative as provided by rules and regulations.
 
 On page 21 of the Report, it is said:
 
 13
 In the area of parole decision-making, the legislation establishes clear standards as to the process and the safeguards incorporated into it to insure fair consideration of all relevant material, including that offered by the prisoner. The legislation provides a new statement of criteria for parole determinations, which are within the discretion of the agency, but reaffirms existing caselaw as to judicial review of individual case decisions.
 
 
 14
 In the next paragraph the Report describes the provisions for appointment of counsel as follows:
 
 
 15
 The legislation also reaffirms caselaw insuring a full panoply of due process to the individual threatened with return to prison for violation of technical conditions of his parole supervision, and provides that the time served by the individual without violation of conditions be credited toward service of sentence. It goes beyond present law in insuring appointment of counsel to indigents threatened with reimprisonment. (Emphasis supplied).
 
 
 16
 Prior to enactment the Senate version of this measure provided for optional appointment under the Criminal Justice Act. The House version required retained or appointed counsel unless waived by the parolees. It was said by Representative Kastenmeier on the floor of the House:
 
 
 17
 * * * The two Houses were in disagreement over the role of appointed counsel in revocation hearings. The House bill held that revocation of parole entailed a serious possible deprivation of liberty which required that the parolee have the benefit of counsel in order to be able to marshal his arguments and organize his defense.
 
 
 18
 The Senate agreed that this was a reasonable position, and the Conference does provide for counsel at revocation proceedings. 122 Cong.Rec. H1500 (March 3, 1976).
 
 III.
 
 19
 The wording of 18 U.S.C. § 4214(a)(2)(B) shows an intent on the part of Congress to confer on the parolee a right to counsel unless the parolee knowingly and intelligently waives such representation. The enacted provision reads as follows:
 
 
 20
 Opportunity for the parolee to be represented by an attorney (retained by the parolee, or if he is financially unable to retain counsel, counsel shall be provided pursuant to section 3006(A) or, if he so chooses, a representative as provided by rules and regulations, unless the parolee knowingly and intelligently waives such representation.
 
 
 21
 Use by Congress of the word "shall" and of the words which require that the parolee waive counsel knowingly and intelligently are cogent evidence of this intent on the part of Congress.
 
 
 22
 The quoted section is a part of the procedural provisions of the Act as to hearings to be conducted by the Parole Commission, the giving of notice as to violations and as to the time, place and purpose of the scheduled hearing, provision for appeal, the right of the parolee to testify and present witnesses, his opportunity to be apprised of the evidence against him and to confront and cross-examine adverse witnesses if he so requests. It also provides for subpoenaing witnesses and describes the proceedings applicable to subsection (B).
 
 
 23
 The government's argument that the right to counsel in these proceedings continues to be subject to the discretion of the court is based on the reference in § 4214(a)(2)(B) to § 3006A. Section 3006A is the Criminal Justice Act, the various sections of which detail the procedure for appointment of counsel in criminal prosecutions. Subsection (g) of that Act states that persons subject to revocation of parole may be furnished representation pursuant to the Criminal Justice plan when the magistrate or the judge determines that the interests of justice so require. The government's position is that this general reference to the Criminal Justice Act resulted in resurrecting the provision of the Act which makes appointment of counsel discretionary; that the matter of appointment of counsel continues to be a matter of discretion and not of right. This argument disregards the use of "shall" in the new Act and disregards as well the many evidences that Congress intended for the parolee whose parole was being revoked to have the Right to demand or waive counsel. If Congress had intended for the law to remain the same, it is unlikely that it would have couched § 4214(a)(2)(B) in terms like "shall." Nor would it have provided for existence of the right unless waived. Furthermore, Congress would not have, on the one hand, granted to the parolee a right to have counsel, while simultaneously nullifying the right by deferring generally to the Criminal Justice Act.
 
 
 24
 The terms of the Act considered as a whole are at odds with the construction which the government contends should be given. The new Parole Act undertakes to provide for due process at every stage of the proceedings and in this connection it provides for the right to counsel at each stage.
 
 
 25
 Thus, even a revocation which is pursuant to § (b)(1), which is based on a conviction for a federal, state or local crime subsequent to the granting of parole, notwithstanding that it constitutes probable cause for the revocation, nevertheless, requires a review by the Commission. It also requires that the parolee receive notice of the pending review and an opportunity to submit a written application containing information as to the disposition of the detainer (resulting from the conviction which is the basis for the parole violation). Section (b)(1) further states that the parolee shall have counsel as provided in subsection (a)(2)(B) unless it is waived to assist him in the preparation of such application.
 
 
 26
 If, in connection with revocation based on conviction the Commission needs additional information, notice must be given to the parolee. Also, he must be allowed to appear and testify and, unless waived, shall have counsel as provided in subsection (a)(2)(B).
 
 
 27
 In the situation in which the alleged violator is taken by warrant and knowingly and intelligently waives his right to a hearing under subsection (A), he is entitled to counsel under subsection (c), where he waives preliminary hearing and where the final revocation hearing is held within 90 days.
 
 
 28
 The point we make is that counsel is provided for not only at the revocation hearing, but in connection with most other actions which are taken incident to such revocation. All of this we say refutes the government's argument that the right to counsel is hedged or conditioned. Instead it evidences intent by Congress that, unless waived, the right exists throughout the proceedings.
 
 IV.
 
 29
 A line of decisions of this court, most of which are unpublished, pursue a position opposite to that which we take here. See Robinson v. Benson, 570 F.2d 920 (10th Cir. 1978); In the Matter of the Application of Dale E. Crowder for Appointment of Counsel, No. 76-2103 (10th Cir., June 10, 1977); In the Matter of the Application of Thomas A. Quirk for Appointment of Counsel, No. 76-1578 (10th Cir., December 7, 1976). Cf. Coronado v. United States Board of Parole, 551 F.2d 275 (10th Cir. 1977). With the exception of Robinson v. Benson, supra, these are summary affirmance cases. All of these decisions dispose of the issue on the ground that the general reference in § 4214(a)(2)(B) to § 3006A, the Criminal Justice Act, perpetuated the old law. One subsection of § 3006A, subsection (g), provides for discretionary appointment of counsel. If the statute had been written so as to refer specifically to subsection (g) of § 3006A, the argument of the government would be better supported. As it is, the reference contained in § 4214(a)(2)(B) is to § 3006A alone. It is then a general reference to the machinery contained in the Criminal Justice Act and brings into play the machinery of that Act like manner of appointment and other administration.
 
 
 30
 In our unpublished decision, In the Matter of Ronald D. Richardson for Appointment of Counsel, No. 76-1786 (10th Cir., October 20, 1976), this court reiterated that no Right to counsel existed. It said:
 
 
 31
 The Supreme Court has held that there is no per se requirement of appointment of counsel for indigents in the context of a parole revocation setting. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). However, 18 U.S.C.A. § 4214(a)(2)(B) and 18 U.S.C. § 3006(A) (3006A) provide for discretionary appointment of counsel where a court determines that the interests of justice so require.
 
 
 32
 The district court noted that appellant's admission of conviction of another crime would be sufficient to justify revocation of parole, regardless of appellant's intention to dispute charges listed on the warrant. Cotner v. United States, 409 F.2d 853 (10th Cir. 1969). On this basis, the district court determined that the interests of justice did not require appointment of counsel in appellant's case.
 
 
 33
 This is somewhat representative of the basis on which these decisions have proceeded, which is that they assume that 18 U.S.C. § 4214(a)(2)(B) incorporates by reference 18 U.S.C. § 3006A(g). As noted above, they fail to take into account that subsection (g) is not mentioned in the new enactment. The opinion of the Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), continues to be cited, notwithstanding that it is no longer law. We quote from Ronald D. Richardson, supra, because it is representative of the way that the others are handled. Because these cases are not in accord with the Act of Congress, they can no longer be regarded as authority.
 
 
 34
 The explanation for the resilience of the discretion rule in parole proceedings is perhaps attributable to the fact that the parole status has long been regarded as a privilege, which can be revoked at will. Due process in this context has not been considered a problem by the courts, and undoubtedly this is why the courts have been slow to accept the dictates of the 1976 Parole Act, even though it defines the rights of parolees in strong terms.
 
 V.
 
 35
 Finally, counsel for the government have filed a "Suggestion of Mootness" in respect to both William Baldwin, appellant, and John M. Espinoza, petitioner-appellant.
 
 
 36
 As to Baldwin, it is said that following a regular review hearing in March 1978, the Parole Commission ordered that Baldwin be reparoled effective June 8, 1978. Subsequently, Baldwin was released on parole and is now under parole supervision.
 
 
 37
 Espinoza, it is said, was granted parole on April 25, 1978, "to the Northern District of California." The government claims that it is axiomatic that a concrete and continuing case or controversy must exist in order to allow a judicial resolution of the issues presented by a case, citing DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1971), and North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). It is also pointed out that since neither appellant is in confinement, the required concrete case is not present.
 
 
 38
 We must disagree with the government's position. See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). There Sibron was convicted and sentenced to six months. He completed service of the six-month sentence, and it was contended that the case became moot when he was released under St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943). The Court ruled, however, that serving the sentence did not cause mootness. It rejected the proposition that there was no longer subject matter on which the judgment of the court could operate. The Supreme Court noted that most criminal cases involve adverse collateral legal consequences, and so the mere possibility that this will be the case is enough to preserve a criminal case from ending "ignominiously in the limbo of mootness." The fact that the conviction could be used in New York for impeachment purposes was regarded as enough to keep the litigation alive. The Court said that the case of St. Pierre had to be read in the light of later cases to mean that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will flow from the challenged conviction.
 
 
 39
 As to continued jurisdiction to entertain a writ of habeas corpus, Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), has held that a state prisoner free on parole was in custody within the meaning of the habeas corpus act, § 2241, and could challenge the validity of his conviction. The Court said that while the petitioner's parole released him from immediate physical imprisonment, it nevertheless imposed conditions which significantly confined and restrained his freedom, and that this was enough to keep him in the "custody" of the members of the Parole Board, in this instance Virginia, within the meaning of the habeas corpus statute. In Jones, as here, the accused had been in prison when the petition was filed.
 
 
 40
 In Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the petitioner was in prison when the petition was filed. His sentence expired while the petition was pending and he was unconditionally released. The Court overruled its prior decision in Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960), and held that the release did not moot the proceeding. It noted that civil disabilities and burdens accompanied the prisoner after his release. This was seen as justification for its conclusion that the case was not moot.
 
 
 41
 Cf. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), wherein the Supreme Court held that where habeas corpus cannot be used that the writ of coram nobis can be employed for the purpose of attacking a judgment.
 
 
 42
 Thus it must be concluded that the suggestion of mootness is wholly without merit.
 
 
 43
 The cause is remanded to the district court with directions to that court to void the orders of revocation which were granted illegally and without having afforded the appellant and the petitioner-appellant the right to have counsel at the said hearing and for related proceedings consistent with the views expressed above.