452 So.2d 611 (1984)
Dennis Maynard HOOPER, Appellant,
v.
STATE of Florida, Appellee.
No. 83-2181.
District Court of Appeal of Florida, Fourth District.
June 4, 1984.
Richard L. Jorandby, Public Defender, and Lawrence Duffy, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Laura L. Sellers, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
We reverse and remand for further proceedings on the authority of Hicks v. State, 452 So.2d 606 (Fla. 4th DCA 1984). As in Hicks we acknowledge that our decision herein is contrary to the decision in Sanderson v. State, 447 So.2d 374 (Fla. 1st DCA Case 1984).
ANSTEAD, C.J., and LETTS, J., concur.
GLICKSTEIN, J., concurs with reversal only and dissents as to directions on remand, with opinion.
GLICKSTEIN, Judge, concurs with reversal only and dissents as to directions on remand.
This is an appeal of an order of the trial court revoking Dennis Maynard Hooper's probation, and of the sentence thereupon imposed. While I would reverse because of the procedure followed by the trial court, on remand my direction would be different.
On June 3, 1982, Hooper pled guilty to grand theft and was adjudged guilty, but the trial court withheld imposition of sentence, instead placing Hooper on four years' probation, provided he serve 76 days in jail and make restitution as determined by his probation officer. On September 20, 1982, Hooper's probation officer filed an affidavit of probation violation, consisting of changing his residence and leaving his job without her consent, as well as absconding from supervision.
When Hooper appeared to answer the alleged probation violation, the trial judge asked him whether he admitted or denied the probation officer's allegations, explaining Hooper could have his probation revoked and be charged with his maximum sentence if the probation officer's charges were true. The judge then read Hooper the sworn allegations; and Hooper said they were true, admitting he had not reported to his probation officer since leaving her supervision; and that his whereabouts had been unknown until his recent arrest. The judge asked him if he had been pressured by anyone to admit his violation of his probation, and Hooper said he had not. At the close of the hearing, the trial court, having found that Hooper had materially violated his probation, and having revoked it, asked if he now desired counsel to be appointed. The public defender was appointed as a result of Hooper's affirmative answer. By that time, however, the public defender filed a motion to withdraw his client's admission of guilt and to set a final evidentiary hearing, citing as authority Smith v. State, 427 So.2d 773, 774 (Fla. 2d DCA 1983), wherein the court said, "We do not believe the right to counsel should be contingent upon appellant denying the charges or presenting a substantially complicated case." On the day of the sentencing hearing, after the court denied the foregoing motion, Hooper explained he had absconded because someone had stolen his car during his incarceration; his life had been threatened several times; there had been attempts to run him over; there was to be no pay, from the job he had taken, for four months; that he could not find another job; and that his probation officer said she could not help him after his life had been threatened. When he called someone in California to solicit a loan he was denied a loan but was offered a job. Accordingly, *612 he moved to California, where he managed a flower shop for about a year and lived completely within the law until arrested for the probation violation.
The trial court sentenced Hooper to three years and nine months in state prison with credit for time served. This appeal is based upon Hooper's contention that absent a valid waiver, an indigent probationer is entitled to appointed counsel at a probation revocation hearing.
The present case involves two issues; namely, (a) the circumstances in which an indigent probationer is entitled to appointed counsel at a revocation hearing and (b) what a trial court may require a probationer to admit or deny at that hearing.
Taking the issues in reverse order because of the ease in answering the second and difficulty in deciding the first, the governing principles and dichotomy are recited in State v. Heath, 343 So.2d 13 (Fla.), cert. denied, 434 U.S. 893, 98 S.Ct. 269, 54 L.Ed.2d 179 (1977), which held:
We now hold that a probationer, upon a specific request and at periodic intervals, may be required to identify himself and provide all necessary information for his supervision including the place of his residence and his employment. He may also be required to confirm or deny his location at a particular place at a particular time, to explain his noncriminal conduct, and to permit the search of his person and quarters by the supervisor. Failure to do so may itself be grounds for revocation or [sic] probation. His agreement to accept the terms of probation effectively waives his Fifth Amendment privilege with regard to this information. There would be no practical means to properly supervise an individual on probation without a requirement that the probationer respond to directions and requests for information from the probation supervisor. On the other hand, the Fifth Amendment privilege against self-incrimination must be applicable to specific conduct and circumstances concerning a separate criminal offense.
Id. at 16. I see no difference in the inquiry being made in the office of a supervisor or at the probation revocation hearing. See Hall v. State, 421 So.2d 188 (Fla. 2d DCA 1982).
In order to understand the present setting of the primary issue, I believe we must consider the relationship of two decisions by this nation's highest court, one by this state's highest court and the governing Florida Statute, as all of them present a clear, logical picture.
Chronologically, the first decision was Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which held that before parole could be revoked, there must be a revocation hearing, saying:
There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable.
We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically *613 finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.
We do not reach or decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent. [Footnotes omitted.]
Id. at 487-89, 92 S.Ct. at 2603-04, 33 L.Ed.2d at 498-99.
The following year, the Supreme Court decided Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), which answered the question which Morrissey did not consider; namely, whether an indigent probationer or parolee had a due process right to have counsel appointed for him at preliminary and final revocation hearings. The court first eliminated any distinction between probation and parole in the consideration of the foregoing question, saying:
Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one.[3] Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. [Footnote 4 omitted.]
[3] Despite the undoubted minor difference between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole. See, e.g., Van Dyke, Parole Revocation Hearings in California: The Right to Counsel, 59 Calif.L.Rev. 1215, 1241-1243 (1971); Sklar, Law and Practice in Probation and Parole Revocation Hearings, 55 J.Crim.L.C. & P.S. 175, 198 n. 182 (1964).
Id. at 782, 93 S.Ct. at 1759-60, 36 L.Ed.2d at 661-62. The court then squarely met the question now facing us, holding:
By the same token, we think that the Court of Appeals erred in accepting respondent's contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel. In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him. And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel.
The introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding. If counsel is provided for the probationer or parolee, the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views. The role of the hearing body itself, aptly described in Morrissey as being "predictive and discretionary" as well as factfinding, may become more akin to that of a judge at a trial, and less attuned to the rehabilitative needs of the individual probationer or parolee. In the greater self-consciousness of its quasi-judicial role, the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate rather than to continue nonpunitive rehabilitation. Certainly, the decisionmaking process will be prolonged, and the financial *614 cost to the State  for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review  will not be insubstantial.
In some cases, these modifications in the nature of the revocation hearing must be endured and the costs borne because, as we have indicated above, the probationer's or parolee's version of a disputed issue can fairly be represented only by a trained advocate. But due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed.
In so concluding, we are of course aware that the case-by-case approach to the right to counsel in felony prosecutions adopted in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), was later rejected in favor of a per se rule in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). See also Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). We do not, however, draw from Gideon and Argersinger the conclusion that a case-by-case approach to furnishing counsel is necessarily inadequate to protect constitutional rights asserted in varying types of proceedings: there are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences.
In a criminal trial, the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights which may be lost if not timely raised; and, in a jury trial, a defendant must make a presentation understandable to untrained jurors. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation described above; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole. The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases.
The differences between a criminal trial and a revocation hearing do not dispose altogether of the argument that under a case-by-case approach there may be cases in which a lawyer would be useful but in which none would be appointed because an arguable defense would be uncovered only by a lawyer. Without denying that there is some force in this argument, we think it a sufficient answer that we deal here, not with the right of an accused to counsel in a criminal prosecution, but with the more limited due process right of one who is a probationer or parolee only because he has been convicted of a crime.
We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness  the touchstone of due process  will require that the State provide at its expense counsel for indigent probationers or parolees.
It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, *615 it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record. [Emphasis added. Footnotes omitted.]
Id. at 787-91, 93 S.Ct. 1762-64, 36 L.Ed.2d 664-67.
When the foregoing decisions were reached, Florida already had in place section 948.06(1), Florida Statutes (1969), which provided and still provides:
Whenever within the period of probation there is reasonable ground to believe that a probationer has violated his probation in a material respect, any parole or probation supervisor may arrest such probationer without warrant wherever found, and forthwith shall return him to the court granting such probation. Any committing magistrate may issue a warrant upon the facts being made known to him by affidavit of one having knowledge of such facts for the arrest of the probationer, returnable forthwith before the court granting such probation. Any parole or probation supervisor, all officers authorized to serve criminal process, and all peace officers of this state shall be authorized to serve and execute said warrant. The court, upon the probationer being brought before it, shall advise him of such charge of violation and if such charge is admitted to be true may forthwith revoke, modify or continue probation and, if revoked shall adjudge the probationer guilty of the offense charged and proven or admitted, unless he shall have previously been adjudged guilty, and impose any sentence which it might have originally imposed before placing the probationer on probation. If such violation of probation is not admitted by the probationer, the court may commit him or release him with or without bail to await further hearing, or it may dismiss the charge of probation violation. If such charge is not at said time admitted by the probationer and if it is not dismissed, the court, as soon as may be practicable, shall give the probationer an opportunity to be fully heard on his behalf in person or by counsel. After such hearing, the court may revoke, modify, or continue the probation. If such probation is revoked, the court shall adjudge the probationer guilty of the offense charged and proven or admitted, unless he shall have previously been adjudged guilty, and impose any sentence which it might have originally imposed before placing the probationer on probation. [Emphasis added.]
A fair reading of the statute leads to the conclusion that the Legislature of this state, as the spokepersons for the citizens of Florida in the codification of our social value judgments, never intended to provide counsel for all indigent probationers in jeopardy of revocation of their conditional liberty. Its clear purpose was to announce that in Florida there would be no star chamber proceedings with probationers being precluded from having legal assistance. In short, the statute permitted the assistance of counsel; it did not require it.
Then State v. Heath was decided, which quoted at length from Morrissey in the same manner as I have done. It then said in reliance upon Gagnon:
A probationer does not enjoy the same status as an ordinary citizen, but even so a probationer is entitled to some but not *616 all due process rights. In Gagnon v. Scarpelli, supra, the United States Supreme Court held that these include the right to preliminary and final revocation hearings under the same conditions provided in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
adding:
The purpose of a revocation hearing is to determine whether the probationer has given cause to the court to revoke his probation. We recently noted that evidence obtained in violation of the Fourth Amendment may be admissible against the probationer at a revocation hearing even though it must be excluded at a criminal trial.
343 So.2d at 15. The specific inquiry in State v. Heath was the right of the probationer against self-incrimination; however, I believe  in light of the existing Florida statute  that the highest court of this state would not pick and choose from Gagnon what it liked and reject what it did not like. Instead, I would like to think that our state's highest court would respect our nation's highest court and the pronouncement by our Legislature were it faced with the first issue in this case and would consider that Floridians had not afforded probationers greater procedural due process than the law of the land required.
I further suggest the Supreme Court of Florida recognized that although Morrissey and Gagnon were framed in administrative trappings involving neutral boards with jurisdiction to revoke probation, the principles recited in those cases applied equally to revocation by a neutral magistrate or judge, for the reason that the concern in both instances is conditional liberty, not absolute liberty. Were it the latter, surely the whole panoply of procedural due process rights in a criminal proceeding would apply, including the right to trial by jury in appropriate instances.[1]
Accordingly, I cannot reconcile the foregoing with the decision of this court in Hicks v. State, also issued today, and cited by the majority, or with the decision of our companion court in Smith v. State, which expressly rejected the limitations upon procedural due process in Gagnon without any explanation of the authority by which it did so, or any mention of the recognition afforded Morrissey and Gagnon by this state's highest court in State v. Heath. Without ascribing hubris to this or our companion court, it is my opinion that Hicks and Smith expressly conflict with the holding in Gagnon that indigent probationers do not have a per se right to counsel. I find support for my opinion in Sanderson v. State, cited by the majority, which applied the limitations in Gagnon and suggested that if every indigent probationer is going to be automatically provided with counsel when a violation is alleged against him  without regard to the nature of the violation or the existence of any disputed issue, that extension of procedural due process must come from the Legislature, which holds the purse strings of the citizenry as their surrogate. Only that body, in my opinion, has the authority to disregard or find inapplicable the cost analysis which undergirds the holding in Gagnon.
As for the facts of this case, I have emphasized language in Gagnon that describes two categories in which a presumption arises that counsel should be appointed. The latter category applies here. It was error for the trial court to proceed without informing Hooper of his right to request counsel. On remand the trial court should be directed to vacate Hooper's admission of guilt and to set the matter for evidentiary hearing.
It would be my suggestion that when a probationer, unaccompanied by counsel, makes his first appearance in revocation proceedings, the trial court should, after reading to the probationer the alleged probation violations and the charges on which they are based, and after explaining to him the nature and potential consequences of *617 the proceedings, but before taking any plea from the probationer, inform him of his right to request counsel. The trial court should further advise the probationer that if he desires counsel and can demonstrate indigence he will be provided with counsel only under the circumstances described in Gagnon. There is no magic incantation that should be recited, but the sense of the Gagnon guiding factors ought to be conveyed. If the probationer does not waive counsel, and if, though indigent, he is denied appointed counsel, the trial court would be required to state clearly on the record the reasons for the denial.
There is a basic difference between the decision of this court in Hicks and that of our companion court in Smith; namely, that in the former, the opinion recites the reasons for its not following the limitations in Gagnon, whereas the latter simply recites that the court is not going to follow Gagnon. The reasons given in Hicks are three:
1. A per se rule is fairer than Gagnon. My reply to that is a value judgment of mine which is not shared by others; namely, that, so long as the Constitution does not require otherwise, whether or not a rule is fair is a matter for the Florida Legislature, which is the forum for deciding in what quantity taxpayers' dollars are to be appropriated for which programs  after debate by the people's surrogates and consideration of the various social judgments advocated in that debate. The Legislature has never said that every indigent probationer who is charged with failure to make monthly reports, or to pay monthly assessed costs or to keep a supervisor informed of his address  all of which can result in violation of probation and imprisonment  is entitled to be advised. Its expression is contained in Section 948.06(1), quoted above. It seems highly inappropriate for this court to take on the responsibility of spending the tax dollars of the citizens who reside in this district when that is the responsibility of the Legislature.
Our duty is to determine the constitutionality of statutes because of our legal training. It is also not unseemly for us to request the Legislature to consider legislative changes because of our perception or our sensitivity. It is one thing to "suggest," rendering unto Caesar that which is Caesar's. It is quite another, in my opinion, to wrest rather than to render.
2. Gagnon was decided in the probation violation framework of an administrative proceeding rather than a judicial proceeding; therefore its basis upon the cost to the taxpayers does not bind this court to follow it, Florida having adopted a judicial, not administrative method of determining violations. I find a number of flaws in this argument. First, the Hicks panel has added to the taxpayers' obligation the potential expense of providing every indigent probationer with counsel. It does so, knowing the existence of cost increase being occasioned by adding to the obligations of public defender staffs, but without any knowledge as to the extent of the cost increases, because (a) a court is not equipped to take testimony as would a legislative committee; and (b) the record in Hicks is obviously void of any cost data. Second, the Supreme Court in Gagnon had before it the applicable statutes in every state and was well aware of the fact that some states used judicial proceedings and other administrative; so the Court's discourse on administrative agency hearings as a rationale for its holding is eye-wash. Nowhere in the opinion is there a statement that the Court was making a rule that applied only to an administrative framework. Third, the Court expressly recited that a probation revocation proceeding is not a criminal trial, and it laid out basic distinctions between the two.[2] That should be a red flag to this court that the Court intended judicial revocation and administrative revocation to be treated equally. Fourth, the Hicks' opinion, by fixing onto the distinction between administrative v. judicial conveniently ignores the balance *618 of the opinion, which convenience does not make for fair evaluation of the rule adopted in Gagnon. Fifth, there cannot be 50 separate constitutional rules under the Federal Constitution for revocation proceedings simply because there may be 50 separate ways to revoke probation in the several states. Sixth, the Hicks opinion does not mention that in Florida there is a combination of administrative and judicial personnel involved in probation violations; and that violation is initiated by administrative personnel. Seventh, when does the judicial system submerge under the weight of its self-imposed burden? A debate of this matter in the Legislature would seem logical, where the "per se" rule could be perceived vis a vis the criminal justice system. Specifically, the elected representatives would decide whether the system should be further clogged with additional proceedings that are not constitutionally required to protect individuals on probation by grace after committing a criminal offense.
3. A per se rule tends to reduce uncertainty and enhance consistency. To me this is a speculative expression in a vacuum, as the Hicks opinion neither explains nor supports the conclusion in a practical manner. It seems more appropriate to suggest the opinion's holding reduces the likelihood of efficient, speedy determinations and enhances the cost and complication of justice without judicial or statutory authority therefor.
I suggest that the view which I espouse here, namely, that there are not three legislative bodies in Florida  the House of Representatives, the Senate and the Fourth District Court of Appeal  finds support in the parallel case of Baldwin v. Benson, 584 F.2d 953 (10th Cir.1978). The situation facing the court in that post-Gagnon decision was identical to that which would occur if the Florida Legislature were to amend Section 948.06(1) tomorrow, statutorily authorizing implementation of the "per se" rule. There, after Gagnon, and with complete awareness of both Morrissey and Gagnon, the Congress enacted the United States Parole Commission and Reorganization Act in 1976. The court held that Gagnon was no longer the law because the act expressly provided a "per se" rule for parole violators. We must remember the Supreme Court said there was no distinction between parole and probation. The panel in Hicks was provided with a copy of Baldwin v. Benson but was apparently not impressed with its applicability to this case.
In closing, my research of post-Gagnon decisions in other states leads me to conclude that they travel in a myriad of directions. For the most part they do not vary from Gagnon unless a statute or state judicial rule authorizes it. Alphabetically by state, they are In re Armstrong v. State, 294 Ala. 100, 312 So.2d 620, 622 (1975); Hoffman v. State, 404 P.2d 644 (Alaska 1965); Elkins v. State, 147 Ga. App. 837, 250 S.E.2d 535 (1978); Reeder v. Commonwealth, Ky., 507 S.W.2d 491 (1973); People v. Jackson, 63 Mich. App. 241, 234 N.W.2d 467 (1975); Abel v. Wyrick, 574 S.W.2d 411 (Mo. 1978); Fairchild v. Warden, Nevada State Prison, 89 Nev. 524, 516 P.2d 106 (1973); Stapleford v. Perrin, 122 N.H. 1083, 453 A.2d 1304 (1982); Ex parte Shivers, 501 S.W.2d 898 (Tex.Cr.App. 1973); and In re Wentworth, 17 Wash. App. 644, 564 P.2d 810 (1977).
NOTES
[1] See the discussion of Morrissey and Gagnon in Morgan v. Wainwright, 676 F.2d 476 (11th Cir.1982), which also contains a scholarly review of those criminal proceedings in which accused is not entitled to a jury.
[2] A significant difference pointed out is that in a criminal trial there is a jury of limited legal knowledge and experience to whom the facts and the law must be conveyed.