Donald A. RIDGWAY,
Petitioner-Appellant,

v.

T.L. BAKER, Potter County Sheriff,
Respondent-Appellee.

No. 82–1561.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1983.

Samuel T. Jackson, West Texas Legal Services, Amarillo, Tex., for petitioner-appellant.

Chris Hanger, Asst. Atty. Gen., Larry W. Anderson, Jr., Fernando C. Gomez, Asst.

Atty. Gen., Edwin N. Horne, Austin, Tex., for respondent-appellee.

Before RUBIN, TATE and JOLLY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

█ A father who had failed to comply with a Texas state court judgment ordering him to pay child support was imprisoned for contempt in a proceeding in which he was not represented by counsel, despite his request for counsel and his uncontroverted assertion of indigency. Having unsuccessfully sought relief in Texas courts, he sought a writ of habeas corpus on the ground that he was denied due process of law. The federal district court transferred the case to state court for further proceedings. Because a federal court has no power to transfer a case to a state court and because the accused father was denied counsel, then condemned to imprisonment, we grant the writ.

During 1980, Ridgway's wife and child, who then resided in Wichita, Kansas, applied for and received Aid to Families with Dependent Children benefits. As a condition of receiving them, Mrs. Ridgway assigned her right to receive child support payments to the state of Kansas pursuant to the Federal Child Support Enforcement Act, 42 U.S.C. § 651 et seq. The Kansas authorities enlisted the Texas Department of Human Resources to establish a court-ordered child support obligation against Ridgway in accordance with the provisions of the Uniform Reciprocal Enforcement of Support Act. In a Texas proceeding in June, 1980, Ridgway agreed to an order that he pay $125 monthly for the support of his daughter, Lucinday. At that time, Ridgway was represented by counsel. Thereafter, he failed to make regular payments, in violation of the order. When he was in arrears for the total sum of $2,125, he was cited for contempt of court. He appeared, alleging that he was indigent, and requested that the state judge appoint counsel for him. His request was refused, not on the basis of his ability to employ counsel but because the Texas judge thought that Texas law did not "allow" him "to appoint lawyers in these contempt actions." The court then proceeded to trial. The only evidence was testimony that Ridgway was delinquent in his payments and that the total past due was $2,125. The court ordered Ridgway imprisoned until he had purged himself of contempt by paying the arrearage, an accomplishment difficult to attain if he were both indigent and jailed. He unsuccessfully sought habeas corpus relief from the Texas Court of Civil Appeals and the Supreme Court of Texas.

█ Ridgway then sought a writ of habeas corpus from a United States District Court. After proceedings before a federal magistrate, the magistrate recommended that the case be "remanded" to the state court, from which it had never been removed, because the state trial judge had assumed that he "had no discretion to appoint an attorney to represent" Ridgway and, in fact, Texas law grants such authority, citing article 1917 of the Texas Civil Code.[1] The district judge approved the recommendation and ordered the case transferred to state court. After a hearing in state court pursuant to this transfer, the state judge refused to release Ridgway, finding that he had the ability to purge himself of contempt through a work release program. One day after the hearing, however, on August 27, 1982, Ridgway was granted probation.[2]

---

1. "Judges of district courts may appoint counsel to attend to the cause of any party who makes affidavit that he is too poor to employ counsel to attend to the same." Tex.Civil Code Ann. § 1917 (Vernon 1964). The judge's authority under article 1917 is discretionary rather than mandatory.

2. After the court heard oral argument in this case, the state of Texas learned that Ridgway's former wife had been arraigned for the murder of their child. As a result, the state trial court ordered that Ridgway be released from probation and forgave any outstanding arrearages in payment of child support. The state urges that this action rendered the case moot. The origi-

■ While a case improperly removed from a state to a federal court may be remanded,[3] there is no authority to transfer a case from a federal to a state court. Even if the federal district court had such power, the constitutional issue would not be obviated: if Ridgway was jailed despite his lack of counsel, he is entitled to be released from custody, and the belated appointment of counsel now, a year and a half later, could not retroactively validate the proceedings. Due process cannot be accorded nunc pro tunc to validate a period of imprisonment imposed without proper proceedings.

■ The state presses the related argument that we should abstain to let the state courts decide the issue. Texas courts, however, have been presented with the question both in the appeal of this case and in at least one prior case and have not faced it save by implication, denying relief in each instance without explanation. Thus in *Ex parte Wilson*, 559 S.W.2d 698 (Tex.Civ.App. 1977), the court denied a writ of habeas corpus to a petitioner who alleged that he was indigent and had not been given counsel in a non-support contempt action, stating that the issue was appropriate for the Texas Supreme Court to decide. The Texas Supreme Court, however, denied the application without an opinion. *Ex parte Wilson* (b–7220, 1978, unrep.) More important, the issue is one of interpretation of the federal Constitution, not of Texas statutes. The question is not whether state law, which the state now says was improperly understood by its courts, permits counsel to be appointed, but whether counsel is required. "The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377, 387 (1964). As in *Baggett,* the special circumstances prerequisite to application of abstention are not present here. We do not construe the state statute or decide whether or not an indigent parent accused of failure to comply with an order to pay child support has a right to counsel under Texas law, but only whether Ridgway himself was denied due process when he was tried without counsel. Ridgway's plight cannot be remedied by a reinterpretation of Texas law.

■ The state suggests that the record does not establish Ridgway's indigency and that the case is, therefore, not ripe for adjudication. The lack of evidence of Ridgway's poverty beyond his assertion of it is itself evidence of his need for counsel. He offered neither testimony nor affidavit of poverty, but the state court asked for neither. The state court did not deny him counsel for lack of evidence of indigency. Both the state as prosecutor of the action and the state court elected to proceed on the assumption that Ridgway's indigency did not entitle him to counsel. Having imprisoned him for five months, then placed him on probation, the state cannot now be heard to assert an entirely different reason for denying Ridgway counsel.

■ Similarly, there is no merit to the state's contention that Ridgway's federal habeas petition is barred because he has failed to exhaust his state remedies. As we have noted, Ridgway presented his habeas petition to the Texas intermediate and su-

---

nal contempt order, however, has never been vacated. Because Ridgway may suffer collateral consequences from this still-valid order, his case is not moot. *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The state of Kansas may, for example, rely on the Texas order in a separate child support proceeding. "The mere 'possibility' [that a conviction will entail collateral consequences] is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness.'" *Sibron,* 392 U.S. at 55, 88 S.Ct. at 1899, 20 L.Ed.2d at 930 (quoting

*Parker v. Ellis,* 362 U.S. 574, 577, 80 S.Ct. 909, 911, 4 L.Ed.2d 963 (1960) (dissenting opinion)). *Cf. Lane v. Williams,* 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982) (no collateral consequences result from finding that individual has violated parole).

3. 28 U.S.C. § 1447 (1976). Section 1447(d), forbidding appeal of a remand order, does not apply because this case was never removed from state court. That section does not apply to habeas cases instituted in federal court.

preme courts, both of which denied his claim without explanation. Once a federal claim has been submitted to a state's highest court, the exhaustion requirement is satisfied, even if the state court fails to address the federal claim. *Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978).

 We turn, therefore, to the merits. The Constitution's fourteenth amendment guarantee of due process incorporates the sixth amendment assurance that the accused in a criminal prosecution has the right to counsel. This imposes a duty on the state to provide counsel to a person accused who, because of indigency, cannot afford a lawyer. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). This right extends to every case in which the litigant may be deprived of his personal liberty if he loses. *Lassiter v. Department of Social Services,* 452 U.S. 18, 25, 101 S.Ct. 2153, 2158–59, 68 L.Ed.2d 640, 648 (1981).[4]

 The right to counsel turns on whether deprivation of liberty may result from a proceeding, not upon its characterization as "criminal" or "civil."[5] But were the label important, the Texas courts have long considered contempt proceedings growing out of civil actions criminal or quasi-criminal in nature. *Ex parte Davis,* 161 Tex. 561, 344 S.W.2d 153, 155–56 (Tex. 1961); *Ex parte Genecov,* 143 Tex. 476, 186 S.W.2d 225, 227 (1945); *Ex parte Scott,* 133 Tex. 1, 123 S.W.2d 306, 311 (1939).[6] Texas has extended the full armor of due process rights to the non-indigent accused contemnor because of the criminal nature of the proceeding. *See Ex parte Green,* 603 S.W.2d 216, 218 n. 3 (Tex.1980) (fair notice of charges); *Ex parte Hiester,* 572 S.W.2d 300, 303 (Tex.1978) (rights to counsel and to confront witnesses); *Ex parte Werblud,* 536 S.W.2d 542, 547 (Tex.1976) (privilege against self-incrimination); *Cliett v. Hammonds,* 305 F.2d 565 (5th Cir.1962) (guilt beyond a reasonable doubt); *Ex parte Elmore,* 161 Tex. 585, 342 S.W.2d 558, 561 (1961) (presumption of innocence); *Ex parte White,* 149 Tex. 155, 229 S.W.2d 1002, 1004 (1950) (notice and opportunity to be heard); and *Ex parte Scott,* 133 Tex. 1, 123 S.W.2d 306, 311 (1939) (requirement of information or complaint).

· The state's argument that the contemnor imprisoned only for civil contempt has, in the aphoristic phrase, "the keys of his prison in his own pocket," ignores two salient facts: that the keys are available only to one who has enough money to pay the

---

**4.** We recognize that in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court held that an indigent probationer or parolee does not have an absolute right to counsel at a revocation hearing, despite the undeniable threat of loss of liberty. But we find the analysis in *Gagnon* inapplicable to contempt cases. The Court in *Gagnon* focused on two factors not present in the situation before us. First, the court noted the difference between the liberty interests of parolees or probationers and those of other citizens: "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of parole restrictions." 411 U.S. at 781, 93 S.Ct. at 1759, 36 L.Ed.2d at 661 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484, 494 (1972)). *See also* 411 U.S. at 789 & n. 12, 93 S.Ct. at 1763 & n. 12, 36 L.Ed.2d 666 & n. 12. Secondly, the Court relied on the informality of the revocation proceedings and expressed apprehension that the introduction of counsel would transform the role of the hearing body to one "more akin to that of a judge at trial, and less attuned to the rehabilitative needs of the individual probationer or parolee." 411 U.S. at 787–88, 93 S.Ct. at 1762, 36 L.Ed.2d at 665.

**5.** *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *see also Vitek v. Jones,* 445 U.S. 480, 496, 100 S.Ct. 1254, 1265–66, 63 L.Ed.2d 552, 567 (1980) (plurality opinion). *Cf. Lassiter,* 452 U.S. at 27–32, 101 S.Ct. at 2159–62, 68 L.Ed.2d at 649–52 (because parental termination proceedings involve no potential loss of liberty, parent's right to counsel should be decided on case-by-case basis).

**6.** *See also Ex parte Hiester,* 572 S.W.2d 300 (Tex.1978); *Deramus v. Thornton,* 160 Tex. 494, 333 S.W.2d 824, 829 (1960); *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406 (1928); *Ex parte Hosken,* 480 S.W.2d 18 (Tex.Civ.App. 1972).

delinquent child support and that, meanwhile, the defendant, whatever the label on his cell, is confined. If the court errs in its determination that the defendant has the means to comply with the court's order, the confinement may be indefinite. Such an error is more likely to occur if the defendant is denied counsel. Viewed in this light, a civil contempt proceeding may pose an even greater threat to liberty than a proceeding labeled "criminal," with a correspondingly greater need for counsel.

Moreover, the line between civil and criminal contempt is rarely as clear as the state would have us believe. In some instances, the proceeding has a dual character. "Thus, when the court imposes a fine or imprisonment for the violation of a child support order, it is punishing for yesterday's contemptuous conduct. This is essentially criminal contempt. When it adds the coercive sanction of imprisonment until the order is complied with, it is announcing the consequences of tomorrow's contumacious conduct. In the latter instance, the contempt is civil in nature." *Ex parte Hosken,* 480 S.W.2d 18, 23 (Tex.Civ.App.1972) (citing *Ex parte Ramzy,* 424 S.W.2d 220, 227 (Tex. 1968) (Norvell, J., concurring); *Ex parte DeWees,* 146 Tex. 564, 210 S.W.2d 145 (1948).

More fundamentally, if the court determines during the contempt hearing that the contemnor was capable of making the payments at the time they became due and failed to do so, it may confine him for his past contumacious conduct. This sanction is punitive in nature, the term is fixed and definite, and subsequent voluntary compliance does not permit the contemnor to avoid punishment for his past acts. Thus, he is held in, criminal contempt. *Ex parte Werblud, supra.* In a child support proceeding, then, criminal as well as civil sanctions may be imposed. It is. only *after* the evidence is presented and the sentence is imposed that one may discern whether the result is a civil or criminal penalty. Thus,

when the contemnor is summoned to court to show cause why he should not be held in contempt for non-payment of support, he is faced with the prospect of a criminal commitment.[7]

The state courts that have faced this issue have not been uniform in their decisions. Some have found no constitutional requirement that counsel be appointed in this type of case. *See Meyer v. Meyer,* 414 A.2d 236 (Sup.Jud.Ct.Me.1980); *Sword v. Sword,* 399 Mich. 367, 249 N.W.2d 88 (1976); *Duval v. Duval,* 114 N.H. 422, 322 A.2d 1 (1974); *Jolly v. Wright,* 300 N.C. 83, 265 S.E.2d 135 (1980); *In re Calhoun,* 47 Ohio St.2d 15, 350 N.E.2d 665 (1976). Others have held that the fourteenth amendment commands appointment of counsel. *See Otton v. Zaborac,* 525 P.2d 537 (Alaska Sup.Ct. 1974); *Hickland v. Hickland,* 56 A.D.2d 978, 393 N.Y.S.2d 192 (1977); *Rudd v. Rudd,* 45 A.D.2d 22, 356 N.Y.S.2d 136 (1974); *Darbonne v. Darbonne,* 85 Misc.2d 267, 379 N.Y. S.2d 350 (Sup.1976); *Commonwealth ex rel. Brown v. Hendrick,* 220 Pa.Super. 225, 283 A.2d 722 (1971); *Tetro v. Tetro,* 86 Wash.2d 252, 544 P.2d 17 (1975); *Ferris v. Maass,* 75 Wis.2d 542, 249 N.W.2d 789 (1977).

The Ninth Circuit Court of Appeals has recognized that due process requires the provision of counsel for the indigent in contempt cases. *Henkel v. Bradshaw,* 483 F.2d 1386 (9th Cir.1973). While in that declaratory judgment action, the court abstained to allow Oregon state courts the first opportunity to decide the controversy, it stated:

[W]e share the district court's view that [the contemnor], absent the representation of counsel, could not be sentenced to jail in the contempt proceeding.

. . . .

. . . The state trial judge, now cognizant of *Argersinger,* will most assuredly know that if a lawyer is not appointed for [the contemnor's] representation, [the con-

---

7. This is a fact that was recognized by the state court judge in this case, if not by the state on appeal here. After denying Ridgway counsel, the state judge proceeded to advise him of his fifth amendment right to refuse to testify, stating, "and that's on the basis that these matters are considered quasi criminal because you can go to jail."

temnor] cannot be confined even if found to have been contemptuous.

*Id.* at 1388–89.

The federal courts, however, have uniformly recognized the right to appointed counsel in various contempt proceedings. The Supreme Court has held that the due process clause requires the benefit of counsel for the accused contemnor in constructive contempt cases. *In re Oliver,* 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682, 687 (1948); *Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767, 774 (1925). An indigent person who faces imprisonment for refusing to testify before a grand jury or refusing to comply with an Internal Revenue Service summons is entitled to appointed counsel. *United States v. Anderson,* 553 F.2d 1154 (8th Cir.1977); *In re DiBella,* 518 F.2d 955 (2d Cir.1975); *In re Kilgo,* 484 F.2d 1215 (4th Cir.1973); *United States v. Sun Kung Kang,* 468 F.2d 1368 (9th Cir.1972).

The state emphasizes the administrative difficulty and the financial burden that would be imposed on the state if it is required to supply counsel in cases such as Ridgway's. To some degree, the concern appears to be paradoxical. If the contemnor is so lacking in means that he cannot afford counsel, he is not likely to be able to pay child support. Under Texas law, if the accused contemnor does not have the means to pay the arrearage, he cannot be committed to jail for the purpose of coercing him to make such payments. A contemnor can be incarcerated only for failure to pay with his present funds, in which case he is not indigent, or for what the state classifies as criminal contempt, in punishment for his past contemptuous behavior, and then only if it is determined that he could have made those payments when they became due. If the parent is indeed indigent the state may obviate the need for counsel by announcing that imprisonment will not result from the proceeding. *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). If it holds the threat of jail over the defendant, however, it must

accord the defendant facing it due process, including the right to counsel.

Once the state has proved mere delinquency in payments, the accused has the burden of proving that his failure to pay was not contemptuous. He must present evidence establishing not only that he has no funds but also that he has no source of funds. *Ex parte Rohleder,* 424 S.W.2d 891, 892 (Tex.1967). Such proof consists of these elements:

(1) that the relator lacks sufficient personal or real property which could be sold or mortgaged to raise the needed sum; and

(2) that the relator has unsuccessfully attempted to borrow the sum from financial institutions . . . ; and

(3) that the relator knows of no other source, including relatives, from whom the sum could be borrowed or otherwise secured.

*Ex parte Lindsey,* 561 S.W.2d 572, 574 (Tex. Civ.App.1978). The indigent who appears without a lawyer can be charged neither with knowledge that he has such a burden nor with an understanding of how to satisfy it.

The Uniform Reciprocal Enforcement of Support Act has worthy social and humanitarian purposes. The parent able to support his child has a duty to do so. The spouse left without means, the child, and the state all have a right to expect the performance of this duty, which is moral as well as legal. If, however, imprisonment, by whatever process it is adjudicated, is the possible result of a proceeding, the defendant who is threatened with jail has the right to a lawyer.

For these reasons the judgment is REVERSED and the case is REMANDED with instructions to grant the writ of habeas corpus.