**Edward John WALKER,
Petitioner-Appellant,**

v.

**Ray McLAIN, Sheriff of Lincoln County, Oklahoma, Respondent-Appellee.**

No. 84–1886.

United States Court of Appeals,
Tenth Circuit.

July 25, 1985.

Steven A. Novick, Legal Aid of Western Oklahoma, Oklahoma City, Okl., for petitioner-appellant.

William D. Simpson, Dist. Atty.'s Office, Chandler, Okl., for respondent-appellee.

Before McKAY, McWILLIAMS and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

The issue in this case is whether an indigent person facing incarceration in a civil contempt action for nonsupport is entitled to have appointed counsel.

The relevant facts are not in dispute. After his divorce from his wife, petitioner was ordered to pay $500 per month in child support. Of this amount, $380 represented the children's share of his monthly social security disability benefits, and $120 represented payments to be made out of petitioner's income. Petitioner's wife has received the $380 each month, but petitioner has never paid the $120 per month additional support obligation. Petitioner claims he is unable to meet this obligation because of indigency. On February 15, 1984, a state trial court found the failure to make support payments to be wilful, held petitioner in contempt, and sentenced him to jail for 90 days, or until he paid $1,000 to purge the contempt. It is undisputed that the trial court did not advise petitioner of any right to appointment of counsel, nor was counsel appointed for him.

The case was originally filed as a habeas corpus action alleging that petitioner's incarceration for civil contempt was illegal because the state trial court had failed to appoint counsel to represent him or to advise him of his right to appointed counsel. The district court denied the petition, and this appeal followed.

The first question that must be addressed is whether the case is moot, since petitioner has served his contempt sentence and is now out of jail. We find this case not to be moot because it falls within the category of cases challenging conduct that is "capable of repetition yet evading review." This doctrine was first enunciated in *Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). In the absence of class action, it is limited to situations where: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975).

The present case meets both of these requirements. Petitioner's contempt sentence was for 90 days, a time that expired long before his case could be reviewed. Respondent conceded at oral argument that 90 days is, to his knowledge, the maximum time served for civil contempt for nonsupport. Secondly, it is likely that petitioner will be subjected to the same conduct again. He asserts that his failure to pay is due to indigency and that as long as his indigency continues he will remain unable to meet his support obli-

gations. There is thus a clear risk that he will once again be held in contempt for nonsupport and again be subjected to imprisonment.

■ In addition, although petitioner has been released, the contempt order has never been vacated. Since petitioner may suffer collateral consequences flowing from his contempt conviction, his case is not moot. *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). The state may, for example, rely on the finding of contempt in determining child visitation rights or in other child support proceedings. *See Pirrong v. Pirrong,* 552 P.2d 383, 385 (Okla.1976). A habeas corpus challenge is moot "only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Lane v. Williams,* 455 U.S. 624, 632, 102 S.Ct. 1322, 1327, 71 L.Ed.2d 508 (1982) (quoting *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1967)). The possible collateral consequences arising from defendant's still valid contempt conviction save this case "from ending ignominiously in the limbo of mootness." *Ridgway v. Baker,* 720 F.2d 1409, 1411–12 n. 2 (5th Cir.1983) (quoting *Sibron,* 392 U.S. at 55, 88 S.Ct. at 1898) (finding case not to be moot because contempt conviction might be used in separate child support proceedings). Thus, we find the case not to be moot despite petitioner's release from confinement.

The government asserts that petitioner was not entitled to appointed counsel because the contempt proceeding that resulted in his incarceration was a civil rather than a criminal proceeding. We cannot accept such a proposition.

■ "It is the defendant's interest in personal freedom, and not simply the spe-

cial sixth and fourteenth amendment right to counsel in criminal cases, which triggers the right to appointed counsel." *Lassiter v. Department of Social Services of Durham County,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 *reh. denied,* 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981). It would be absurd to distinguish criminal and civil incarceration; from the perspective of the person incarcerated, the jail is just as bleak no matter which label is used. In addition, the line between criminal and civil contempt is a fine one, and is rarely as clear as the state would have us believe. The right to counsel, as an aspect of due process, turns not on whether a proceeding may be characterized as "criminal" or "civil," but on whether the proceeding may result in a deprivation of liberty. *Ridgway v. Baker,* 720 F.2d 1409, 1413 (5th Cir. 1983).

The case of *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), sets forth the elements to be evaluated in deciding what due process requires: the private interest that will be affected by the official action; the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest, including the fiscal and administrative burdens additional procedures would entail.[1] The petitioner's interest in this case is one of the most important protected by our constitution—the interest in personal liberty. The district court rejected petitioner's claim, in part, because petitioner "holds the keys to the prison door," in that he need serve no time in jail if he pays to purge the contempt. Thus, it is argued, petitioner's liberty interest is conditional, and, as in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36

---

**1.** Petitioner argues that the *Mathews* analysis is inapplicable because where liberty is at stake a person is presumptively entitled to counsel. Petitioner's Brief at 26–27. However, the language in *Lassiter* on which he relies does not mean that the *Mathews* analysis does not apply when personal liberty is at stake. Rather, it indicates that, where personal liberty is *not* at stake, the

court must take a second step in the analysis and weigh the combination of the *Mathews* factors against a presumption *against* the right to counsel. *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2159. When liberty is at stake, as in this case, the presumption does not come into play, and the court should follow the standard due process analysis.

L.Ed.2d 656 (1973) (probation revocation hearing), and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation hearing),[2] petitioner's right to appointed counsel is not absolute.

It is true that the defendant's right to appointed counsel diminishes as his interest in personal liberty diminishes. *Lassiter*, 452 U.S. at 26, 101 S.Ct. at 2159. However, petitioner's liberty interest cannot truly be viewed as conditional. If petitioner is truly indigent, his liberty interest is no more conditional than if he were serving a criminal sentence; he does not have the keys to the prison door if he cannot afford the price. The fact that he should not have been jailed if he is truly indigent only highlights the need for counsel, for the assistance of a lawyer would have greatly aided him in establishing his indigency and ensuring that he was not improperly incarcerated. The argument that the petitioner has the keys to the jailhouse door does not apply to diminish petitioner's liberty interest.

The state has an interest in seeing that minor children are supported, but this interest would in no way be undercut by providing counsel to aid the nonsupporting parent in establishing that his failure to pay is not wilful. The state has an interest in ensuring the accuracy of the determination reached in a civil nonsupport action and, as will be discussed, a lawyer will aid in achieving this goal. While the state does have an interest in minimizing the cost of such proceedings, this interest in monetary savings cannot outweigh the strong private interest of the petitioner and the substantial procedural fairness achieved by providing a lawyer for the indigent defendant in a civil contempt proceeding. *See Lassiter*, 452 U.S. at 28, 101 S.Ct. at 2160; *Nordgren v. Mitchell*, 716 F.2d 1335, 1339 (10th Cir.1983).

Finally, the risk of an erroneous deprivation of liberty created by refusing to appoint counsel for the indigent petitioner is high. The courts have long recognized the importance of a lawyer in protecting the right to liberty. *See Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The presence of counsel goes to the very integrity of the fact finding process. As the Supreme Court has noted:

> Even the intelligent and educated layman has small and sometimes no skill in the science of law.... He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). The issues in a proceeding for wilful nonsupport are not so straightforward that counsel will not be of assistance in insuring the accuracy and fairness of the proceeding. This is particularly true where the petitioner is indigent and is attempting to prove his indigency as a defense to wilfulness.

Indeed, because of the importance of counsel in ensuring the integrity of the fact finding process, our preferred course would be to require that counsel be appointed to assist a defendant in proving that he is "indigent" and therefore entitled to counsel. If the defendant were then found to have funds available for securing his own counsel, he could be required to reimburse the government for the cost of the counsel provided at the preliminary indigency determination.[3] Unfortunately,

---

**2.** The rule in these cases has since been abrogated by statute. *See Baldwin v. Benson*, 584 F.2d 953 (10th Cir.1978).

**3.** Many states have recoupment statutes, as does the Criminal Justice Act of 1964, which governs

appointment of counsel in federal criminal cases. The Supreme Court has held that requiring a defendant to reimburse the government does not infringe on the defendant's constitutional right to counsel if the statute is "carefully

however, even criminal defendants are not entitled to assistance of counsel in their attempts to prove that they are entitled to appointed counsel under the current state of the law. Thus, it would be inappropriate to extend that right to defendants in civil contempt proceedings at this time. However, due process does require, at a minimum, that an indigent defendant threatened with incarceration for civil contempt for nonsupport, who can establish indigency under the normal standards for appointment of counsel in a criminal case, be appointed counsel to assist him in his defense. Our decision is consistent with that of every federal appellate court that has considered this question. *See Sevier v. Turner*, 742 F.2d 262 (6th Cir.1984); *Ridgway v. Baker*, 720 F.2d 1409 (5th Cir.1983) (finding sixth amendment right to counsel); *Nordgren v. Mitchell*, 716 F.2d 1335 (10th Cir. 1983) (by implication); *Henkel v. Bradshaw*, 483 F.2d 1386 (9th Cir.1973) (dictum). In addition, the federal courts have uniformly recognized the right to appointed counsel in other types of civil contempt proceedings. *United States v. Anderson*, 553 F.2d 1154 (8th Cir.1977) (contempt for refusing to comply with grand jury summons); *In re Di Bella*, 518 F.2d 955 (2d Cir.1975); *In re Kilgo*, 484 F.2d 1215 (4th Cir.1973); *In re Grand Jury Proceedings: United States v. Sun Kung Kang*, 468 F.2d 1368 (9th Cir.1972).

Petitioner was held in contempt and jailed without the assistance of counsel and without being informed of his right to appointed counsel if indigent. An indigent's right to appointed counsel imposes on the court an obligation to inform him of that right. *See Miranda v. Arizona*, 384 U.S. 436, 473 & n. 43, 86 S.Ct. 1602, 1627 & n. 43, 16 L.Ed.2d 694 (1965). In the absence of such notice, an indigent defendant cannot be said to have waived his right to counsel. While we have no clear indication of whether petitioner, if informed of the right, would have met the standards of

financial inability required for appointment of counsel, we need not remand for a determination of that question. As the Supreme Court stated in *Miranda*,

> While a warning that the indigent may have counsel appointed need not be given to the person who is known to have an attorney or is known to have ample funds to secure one, the expedient of giving a warning is too simple and the rights involved too important to engage in *ex post facto* inquiries into financial ability where there is any doubt at all on that score.

384 U.S. at 473 n. 43, 86 S.Ct. at 1627 n. 43. In the present case, the very issue in the contempt proceeding was petitioner's alleged inability to pay his support obligations. Clearly there is sufficient doubt concerning his ability to pay a lawyer that failure to warn him of his right to appointed counsel if indigent cannot be considered harmless error. Petitioner's contempt conviction thus was obtained in violation of his due process rights, and cannot stand.

The state may, if it chooses, cite petitioner again for wilful failure to pay child support. The court would then be required to determine whether he meets the standards for appointment of counsel. If he does, counsel must be appointed to represent him. If, with the assistance of counsel, he is unable to prove indigency, it may validly jail him for contempt. It may not, however, rely on a contempt order entered without the assistance of counsel and without notice of the right to appointed counsel.

The judgment is reversed and the case remanded with instructions to grant the writ of habeas corpus and order petitioner's civil contempt order vacated.

---

designed to ensure that only those who actually become capable of repaying the state will ever be obliged to do so." *Fuller v. Oregon*, 417 U.S. 40, 53, 94 S.Ct. 2116, 2124, 40 L.Ed.2d 642

(1974). There would thus be no constitutional obstacle to requiring reimbursement from those defendants who are found to be financially able to afford counsel.