**In re RAINSFORD J. WINSLOW,
et al., Debtors.**

**Civ. A. Nos. 90–K–2245, 91–K–1428.
Bankruptcy No. 89 B 247 E.**

United States District Court,
D. Colorado.

Sept. 4, 1991.

Winifred Winslow, pro se.

Arthur Lindquist–Kleissler, Denver, Colo., for Carolyn Gail Hunter, trustee.

Robert Dyer, Philip A. Pearlman, Denver, Colo., E. Ord Wells, Fort Morgan, Colo., Christina C. Bauer, Brush, Colo.

Leo M. Weiss, Denver, Colo., trustee.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

These matters are before me pursuant to Bankruptcy Rules 9020 and 9033. I treat them together because they involve similar issues and concerns.

On June 4, 1990, the trustee in this bankruptcy case, C. Gail Hunter (trustee), filed a motion for citation for contempt of court. The trustee alleged that the debtors, Rainsford and Winifred Winslow (debtors), failed to deliver books, records and other property pursuant to the bankruptcy court's pre-

vious turnover order and had converted estate property for their own benefit.

On November 2, 1990, the bankruptcy court entered an order directing the debtors to show cause why they should not be held in contempt of court for failing to comply with the turnover order. After a hearing on the motion, the court entered its findings and conclusions on December 4, 1990. The bankruptcy court found that the debtors had, in fact, failed to produce records and property and held them in contempt of court. It further ordered sanctions be imposed if, on or before December 17, 1990, the debtors failed to produce the specified books, records and property. These sanctions included imprisonment "until such time as the Debtors, or either of them, evidence their willingness and intention to purge themselves of their contempt of Court's Orders by the delivery to the Trustee of such property and records." Order at 12.

The same day that the bankruptcy court entered its findings and conclusions, the debtors filed objections to the court's ruling. Although not formally in compliance with Bankruptcy Rule 9033(b),[1] the objections were construed as effective to stay the bankruptcy court's order until further review by this court. Accordingly, the relevant pleadings were forwarded to me and this matter was assigned Civil Action No. 90–K–2245.

Similar contempt proceedings were again initiated by the trustee this spring. Upon learning that the debtors had leased water rights belonging to the estate and had converted the proceeds for their own benefit, the trustee moved for a second contempt citation. An order to show cause issued on June 28, 1991 and a hearing was conducted several days later. The bankruptcy court entered its findings and orders on the order to show cause on July 24, 1991, holding the

---

1. This rule provides, in pertinent part: "Within 10 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections *which identify the specific proposed findings or conclusions objected to and state the grounds for such objection.*" Bankr.R. 9033(b) (emphasis added). The debtors simply stated that the bankruptcy judge lacked jurisdiction because of motions to disqualify him, that the judge had issued conflicting orders, and that creditors Morgan County and the Williams Group had no valid claims against the debtors. *See Objection to Findings of Contempt of Court* at 1. They did not identify the specific findings or conclusions to which they objected. *Id.*

debtors in contempt. They were again faced with incarceration if they failed to turnover to the trustee the funds they had improperly converted. For a second time, the debtors challenged the court's ruling by filing objections. Likewise, these objections were not in conformance with the requirements of Bankruptcy Rule 9033(b), though construed as effective to stay the contempt order under Rule 9020. The pleadings concerning this second contempt citation were forwarded to the district court, and the matter was assigned Civil Action No. 91–K–1428.

Under Bankruptcy Rule 9033, these matters come to me for "de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule." Bankr.R. 9033(d). I may "accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." *Id.* In exercising this review, I take judicial notice of the bankruptcy court's records and files in this case, as well as those of this court resulting from the many appeals the debtors have taken from the bankruptcy court's rulings. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979) (court may properly take judicial notice of its own records and those of other courts).

■ First, I note that the debtors appeared before the bankruptcy court in both contempt proceedings *pro se*. Although not addressed by the bankruptcy court, the trustee or the debtors, this raises a potentially serious concern about the fundamental fairness of the proceedings below. Normally, a party has the right to counsel only in criminal, not civil, proceedings. *See generally, MacCuish v. United States*, 844 F.2d 733, 735 (10th Cir.1988) (Sixth Amendment right to counsel does not apply in a civil case). Here, there is little question the contempt proceedings in both cases were civil in nature. The purpose of the orders was not to vindicate the authority of the court, but to coerce the debtors to turn over records and property. *See In re Jacques*, 115 B.R. 272, 273 (D.Nev.1990).

The analysis, however, does not end with the characterization of the contempt proceedings as criminal or civil. As the Tenth Circuit noted in *Walker v. McLain*, 768 F.2d 1181, 1183 (10th Cir.1985), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986),

"It is the defendant's interest in personal freedom, and not simply the special sixth and fourteenth amendment right to counsel in criminal cases, which triggers the right to appointed counsel." *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640, *reh. denied*, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981). It would be absurd to distinguish criminal and civil incarceration; from the perspective of the person incarcerated, the jail is just as bleak no matter which label is used. In addition, the line between criminal and civil contempt is a fine one, and is rarely as clear as the state would have us believe. The right to counsel, as an aspect of due process, turns not on whether a proceeding may be characterized as "criminal" or "civil," but on whether the proceeding may result in a deprivation of liberty. *Ridgway v. Baker*, 720 F.2d 1409, 1413 (5th Cir. 1983).

The court in *Walker* noted that "[t]he petitioner's interest ... is one of the most important protected by our constitution—the interest in personal liberty," 768 F.2d at 1183, and rejected the notion that this interest was somehow conditional because the petitioner " 'holds the keys to the prison door,' in that he need serve no time in jail if he pays to purge the contempt." *Id.* Moreover, while the situation in *Walker* was somewhat unique, in that the petitioner there was held in contempt for failure to pay child support but, as a practical matter, could not purge the contempt because he had no funds to make payment, the court observed that the right to appointed counsel is not limited to these circumstances and exists in other types of civil proceedings. *Id.* at 1185; *see, e.g., United States v. Anderson*, 553 F.2d 1154 (8th Cir.1977);

*In re Di Bella,* 518 F.2d 955 (2d Cir.1975); *In re Kilgo,* 484 F.2d 1215 (4th Cir.1973); *United States v. Sun Kung Kang,* 468 F.2d 1368, 1369 (9th Cir.1972); *cf. In re Martin–Trigona,* 590 F.Supp. 87, 88 (D.Conn.1984) (counsel appointed by bankruptcy court for debtor in civil contempt proceedings "with respect to aspects of this litigation that expose [the debtor] to the risk of incarceration").

 I am mindful of the tremendous frustration the debtors' conduct in the bankruptcy court has caused all parties to these proceedings. The debtors have essentially admitted that they acted in contempt of the court's orders,[2] and further delay in holding them responsible for their actions seems unjust. Nevertheless, when faced with the potential deprivation of liberty, debtors' right to counsel is paramount, and any waiver of that right must be knowing and intelligent. *See Carnley v. Cochran,* 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962).

■ Accordingly, these matters are remanded to the bankruptcy court. The debtors are to be informed of their right to assistance of counsel in these contempt proceedings,[3] and their right to appointed counsel if they are indigent. If they indicate an intent to waive this right, the court should advise the debtors of the claims against them, the possible penalties and the dangers of self-representation to establish that the waiver was knowing and intelligent. Should the debtors desire counsel and claim indigency, the court must inquire into the circumstances demonstrating financial need. If counsel is retained or appointed, the debtors must be afforded new hearings on the orders to show cause. If, however, the debtors knowingly and intelligently waive their right to counsel or if indigency is not established and the debtors do not retain counsel, these matters are to be returned to this court for substantive review of the debtors' objections to the bankruptcy court's findings and conclusions under Bankr.R. 9033.

---

**2.** For example, the debtors state in their objections to the court's second contempt order, "[t]he Winslows have never, **REPEAT N E V E R** willfully, knowingly, disregarded any Court Order in the 12 years they have been immersed in this litigation." Verified Objection to Matheson Court Finding the Winslows in Contempt of Court for Cashing $250 Water Rent Check at 2. Yet immediately following this statement, they admit to the act underlying the contempt citation: "When the Winslows received the check for the $250 rent money for the water in 1991, they breathed a sigh of relief that they had some extra money that they could use to pay bills, and keep their 'head above water.'" *Id.*

**3.** The right to assistance of counsel outlined in this order does *not* extend to the ongoing liquidation proceedings in bankruptcy court, where the debtors are not faced with the threat of incarceration. *See In re Flowers,* 83 B.R. 953 (Bankr.N.D.Ohio 1988).