**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 2 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

NATIONAL ELECTRIC
CONTRACTORS ASSOCIATION,
INC.,

      Plaintiff-Counter-Defendant -
      Appellee,

v.

THE KANSAS CHAPTER OF THE
NATIONAL ELECTRICAL
CONTRACTORS ASSOCIATION,
INC.; JIM MLYNEK, in his capacity
as agent for defendant Kansas Chapter
and in his indivual capacity; GARY
(NMI) ANDERSON, in his capacity as
agent for defendant Kansas Chapter
and in his individual capacities,

      Defendants-Counter-Claimants -
      Appellants.

No. 99-3141
(D.C. No. 99-CV-4023)
(District of Kansas)

ORDER AND JUDGMENT[*]

Before **BALDOCK**, **BRORBY** and **LUCERO**, Circuit Judges.

---

    [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

We are called upon to decide whether a district court abused its discretion in granting a preliminary injunction in a dispute between a national industry association and one of its local chapters. The district court issued a preliminary injunction in favor of plaintiff-appellee National Electrical Contractors Association, Inc. ("NECA") against defendants-appellants Kansas Chapter, National Electrical Contractors Association, Inc. ("Kansas NECA"), its President Jim Mlynek, and its Secretary-Manager Gary Anderson. Defendants-appellants challenge the issuance of that preliminary injunction. Exercising jurisdiction pursuant to 28 U.S.C. § 1292(a), we take the district court's view of the matter and affirm.

**I**

NECA and Kansas NECA are incorporated trade associations composed of members engaged in the business of electrical construction. NECA is organized under a national constitution governing all of its members. The national organization charters approximately 118 chapters throughout the country, each one separately incorporated, in charge of its own affairs, and hiring its own professional and clerical staff. Contractors may belong to multiple chapters if they have multiple places of business.

The purpose of NECA is to represent, promote, and advance the interests of the electrical construction industry. Local chapters of NECA also act as multi-

employer bargaining agents for the negotiation of collective bargaining agreements with local unions of the International Brotherhood of Electrical Workers ("IBEW"). In furtherance of that task, NECA assigns its local chapters, such as Kansas NECA, to territories corresponding with the jurisdiction of local chapters of the IBEW.[1]

NECA's Bylaws provide a means by which it can control directly the affairs of one of its local chapters: "sponsorship."[2] Article III, Section 7, of NECA's bylaws provides that,

> A "Sponsored Chapter" may be established (subject to the requirements hereinafter set forth) when one or more of the following situations is found by the Executive Committee to exist:
>
> (a) When a local group of electrical contractors finds itself unable to organize effectively.
>
> (b) When the charter of a NECA Chapter has been revoked.
>
> (c) When forty (40%) percent or more of the membership of an existing chapter, or Division thereof, certifies in writing to the Executive Committee that the Chapter is not functioning adequately by reason of internal dissension.
>
> The requirements to be met prior to the sponsorship of a Chapter are:

---

[1] The preceding facts, as determined by the district court for the purposes of the preliminary injunction motion, are taken from the district court's Memorandum and Order. (I Appellants' App. at 472.)

[2] Article III, Section 6, of NECA's Bylaws defines a "Sponsored Chapter" as "a Chapter which is organized, reorganized or maintained by the direct action, control or participation of the National Association in matters over which a chartered Chapter has autonomous control." (II Appellants' App. at 595.)

(a) Written approval from the chartered Chapter or chapters in whose geographical jurisdiction the sponsored Chapter is to be organized. The Executive Committee shall not alter the geographical territory of any chartered Chapter solely for the purpose of permitting the affiliation of a sponsored Chapter with jurisdiction over the same class of business within said geographical territory.

(b) Written approval from the District Vice President in whose district the Sponsored Chapter is to be organized.

(c) Approval of the Executive Committee.

(II Appellants' App. at 595.)

After a dispute over the amendment of bylaws within Kansas NECA, in December 1998 eleven members of Kansas NECA signed and sent a request to John M. Grau, NECA's Executive Vice President, asking for sponsorship of Kansas NECA on the ground that the chapter was "unable to function adequately due to internal dissention [sic]," and needed "the help of the National Association." (Id. at 604-10.) The members signing the petition represented over forty percent of Kansas NECA's membership in good standing.[3] Kansas NECA's eschewed efforts to adopt bylaws that would be approved by NECA came in the context of a situation in which NECA had informed Kansas NECA—in an August 20, 1998 letter to defendant Anderson—of Kansas NECA's need for "an approved

_____

[3] There is dispute over the validity of signatures on the petition by two members of Kansas NECA. But whether or not those signatures were valid, appellants do not dispute, and the evidence does not belie, the fact that the remaining signatures represented over forty percent of Kansas NECA's membership.

-4-

set of chapter bylaws," without which "full recognition of [Kansas NECA] representatives at the upcoming NECA National Convention and Board of Governors' meeting" could not be assured.  (Id. at 724.)

During the second week of January, 1999, NECA's Executive Committee authorized Grau and NECA District Vice President Ben Cook to establish sponsorship of Kansas NECA.  On January 19, 1999, Cook approved the sponsorship, which was followed by the issuance of Articles of Sponsorship, signed by Grau and finding as follows:

> That the Kansas Chapter, pursuant to the terms of the Kansas Chapter Bylaws, is subject to the Constitution, Bylaws, Rules and Regulations of the National Association.
>
> That the Request for Sponsorship submitted by members of the Kansas Chapter is properly submitted in accordance with Article III of the National Bylaws and is subscribed by and represents more than Forty Percent (40%) of the membership of the Kansas Chapter.
>
> That the Kansas Chapter is not functioning adequately due to internal dissension.
>
> That the conditions for sponsorship as provided for in Article III of the National Bylaws have been met in all respects.
>
> That it is in the best interests of the National Association and the Kansas Chapter that the Kansas Chapter become a "Sponsored Chapter" and maintained by the direct action, control or participation of the National Association in matters over which the Kansas Chapter otherwise would have autonomous control.

(Id. at 653.)  The Articles of Sponsorship established "[t]he initial term of the sponsorship . . . for a period of one (1) year commencing January 19, 1999, and

ending January 18, 2000, subject to termination at an earlier date as determined by the Executive Committee of the National Association." (Id. at 653-54.)[4]

By letter dated January 19, 1999, Grau advised the members of Kansas NECA that NECA had approved the request for sponsorship, notifying them that an informational membership meeting would be held in Topeka on January 27, 1999, at which Cook, NECA's Regional Executive Director David Roberts, Southern Region Field Representative Jim Tatum, and NECA's Labor Counsel Gary L. Lieber would explain the details of the sponsorship. The January 27, 1999, meeting was held and was attended by an estimated eight or nine members of Kansas NECA.

---

[4] At oral argument we questioned, sua sponte, whether this appeal had become moot with the expiration of NECA's initial sponsorship period. An initial sponsorship period lasts a maximum of one-year, with a renewal provision for a maximum of one additional year. Since there is the possibility of renewal, there is a reasonable expectation that these parties could be subjected to the same action. Because the one-year initial period will often be concluded before the appellate process is complete, the issue presented here is "capable of repetition, yet evading review" and is thus justiciable. See, e.g., United States v. Deters, 143 F.3d 577, 578 n.2 (10th Cir. 1998) ("Although the defendant's initial commitment period has expired, this case is not moot [because] . . . [s]uch an order will rarely if ever outlive the appellate process."); Grant v. Meyer, 828 F.2d 1446, 1449 (10th Cir. 1987), aff'd sub nom. Meyer v. Grant, 486 U.S. 414 (1988) ("We also believe that the appeal is not moot even though the November 1984 general election has passed . . . . It is well settled that an appeal is not moot if the dispute is 'capable of repetition, yet evading review.'") (citations omitted); Walker v. McLain, 768 F.2d 1181, 1182-83 (10th Cir. 1985) (holding that case is not moot where "it is likely" that petitioner may be "unable to meet his [child] support obligations" and "will once again be held in contempt for nonsupport and again be subjected to imprisonment").

On that same day, defendants Anderson and Mlynek and other Kansas NECA members attended a meeting in Wichita at which it was resolved that "the [Kansas] Chapter engage legal counsel and take all legal measures to fight National NECA's attempted sponsorship of the Chapter." (Id. at 708.)

After the NECA meeting in Topeka, Fowler, Roberts, Tatum, Lieber, and Kansas NECA Treasurer Douglas Hague went to Kansas NECA's Topeka office, where they met with defendants Mlynek and Anderson. Defendant Anderson was informed of the sponsorship, asked for the office keys, and told to "remove himself from office." (I Appellants' App. at 352.) He refused.

There was also evidence that defendants Mlynek and Anderson, after NECA's sponsorship of Kansas NECA took place, attempted to change the signature requirements for writing checks on behalf of Kansas NECA. The change would have allowed Mlynek and Anderson to write checks without the countersignature of the Treasurer, contrary to Kansas NECA's practice.

On February 8, 1999, NECA filed suit in United States District Court for the District of Kansas seeking both a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that it had lawfully sponsored Kansas NECA and preliminary and permanent injunctions against defendants prohibiting them from interfering with the sponsorship or taking any action inconsistent with the sponsorship. Following a hearing, the district court issued a show cause and temporary restraining order

against defendants. The district court thereupon conducted full evidentiary hearings on plaintiff's preliminary injunction motion, afterwards issuing a Memorandum and Order granting a preliminary injunction that prohibited defendants from engaging in the following actions:

> (1) interfering in any way with the operation of the Kansas Chapter by [NECA]; (2) interfering with NECA's access to the Kansas Chapter's offices, books, records, bank accounts and any other property; (3) scheduling and/or conducting any Board of Directors meetings or membership meetings without the express written approval of David Roberts, NECA Executive Director of Southern Region; and (4) transacting or attempting to transact any financial business concerning the Kansas Chapter, including with respect to any of its committees.

(I Appellants' App. at 495-96.) This interlocutory appeal followed.

## II

"We review the grant of a preliminary injunction for an abuse of discretion." ACLU v. Johnson, 194 F.3d 1149, 1155 (10th Cir. 1999) (citing Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs., 31 F.3d 1536, 1543 (10th Cir.1994)). "We reverse that grant 'only if the district court abuses its discretion, commits an error of law, or is clearly erroneous in its preliminary factual findings.'" Id. (quoting Kansas Health Care Ass'n, Inc., 31 F.3d at 1543 (internal quotation and citation omitted)).

> A party seeking a preliminary injunction
>
> must show that four conditions are met: (1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the

threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest.

Johnson, 194 F.3d at 1155 (citing Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1171 (10th Cir. 1998)).  Where a party seeks a mandatory injunction that would alter the status quo, the moving party must "satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in [its] favor."  SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098-99 (10th Cir. 1991).  "The burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits." GTE Corp. v. Williams, 731 F.2d 676, 679 (10th Cir. 1984) (citations omitted).

## A

With respect to NECA's likelihood of prevailing on the merits, it is clear, despite appellants' claims to the contrary, that Kansas NECA was bound by the sponsorship provisions of NECA's Bylaws.  Whether or not, as appellants and appellees dispute, Kansas NECA possessed a valid charter, its articles of incorporation provide that it shall "cooperate in general with [NECA], conducting all activities in accord with [NECA's] Constitution,"  (II Appellants' App. at 611), and its bylaws provide that "[e]ach member [of Kansas NECA] upon becoming a member, agrees to be bound by each and every provision of the

Constitution of NECA." (Id. at 574.) NECA's Constitution, in turn, incorporates NECA's Bylaws by reference, stating in Article I that NECA "shall be governed under this Constitution . . . and by subsidiary bylaws designated the 'Bylaws' adopted simultaneously herewith . . . which Bylaws shall not be in conflict with the provisions of the Constitution." (Id. at 586.) Article III, Section 2, further provides that "Sponsored Chapters shall be affiliated by articles of sponsorship agreed to on an individual basis consistent with the provisions of the Bylaws." (Id. at 587.) Thus, by agreeing to be bound by NECA's Constitution, Kansas NECA is likewise bound by NECA's Bylaws and sponsorship provision.

The evidence is compelling that NECA complied with its Bylaws' conditions for sponsorship of Kansas NECA. As noted, over forty percent of Kansas NECA's members petitioned NECA for sponsorship on grounds of internal dissension pursuant to Article III, Section 7(c), of NECA's Bylaws.[5] There was approval of sponsorship by the District Vice President and the Executive Committee. Thus, when it found the sponsorship proper, the district court neither "abuse[d] its discretion," nor "commit[ted] an error of law," nor was

---

[5] Despite appellants' contention that there was no internal dissension within Kansas NECA, the district court found that there was, and our reading of the record indicates that finding was not clearly erroneous. See Johnson, 194 F.3d at 1155.

-10-

"clearly erroneous in its preliminary factual findings" regarding this point.

Johnson, 194 F.3d at 1155 (internal quotations and citations omitted).[6]

Similarly, defendants' argument based on Kansas corporation law is not sufficient to meet the threshold for reversal under the abuse of discretion standard.[7] Defendants cite Kan. Stat. Ann. § 17-6505(c) for the proposition that a meeting was legally required before Kansas NECA could approve sponsorship by the national organization.[8] But it is an unreasonable interpretation of the

---

[6] Under the abuse of discretion and "clear error of law" standard, we must likewise uphold the district court's legal conclusion that the "written approval" requirement could not logically apply to the "internal dissension" ground for NECA sponsorship, but instead applies exclusively to the other grounds for sponsorship, because "written approval" would not be forthcoming from a chapter riven by internal dissension. (II Appellants' App. at 492-93.)

[7] We find that defendants did not raise their present Kansas corporation law arguments before the district court. It is a general rule that this court will not consider an issue on appeal that was not raised below. See Walker v. Mather, 959 F.2d 894, 896 (10th Cir. 1992). But even assuming arguendo that the issue is not barred, it is meritless, and we affirm on that basis.

[8] Kan. Stat. Ann. § 17-6505(c) provides as follows:

> Unless otherwise provided in this act, the articles of incorporation or bylaws of a nonstock corporation may specify the number of members having voting power who shall be present or represented by proxy at any meeting in order to constitute a quorum for, and the votes that shall be necessary for, the transaction of any business. In the absence of such specification in the articles of incorporation or bylaws of a nonstock corporation, 1/3 of the members of such corporation shall constitute a quorum at a meeting of such members, and the affirmative vote of a majority of such members present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the members, unless the vote of

language "any business" to construe Kansas corporation law as mandating a meeting of voting members in the case of sponsorship. We can find no case law interpreting the provision on which defendants rely. We find, however, a general provision granting corporations broad authority to regulate their affairs as they see fit:

> [E]very corporation, its officers, directors, and stockholders shall possess and may exercise all the powers and privileges granted by this act or by any other law or by its articles of incorporation, together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the business or purposes set forth in its articles of incorporation.

Kan. Stat. Ann. § 17-6101(a). As noted, Kansas NECA is bound to follow NECA's Constitution and Bylaws, and the sponsorship procedure set forth therein is arguably "necessary or convenient to the conduct, promotion or attainment of the business or purposes set forth in [Kansas NECA's] articles of incorporation," especially in light of the obvious conflict existing within Kansas NECA that threatened to disrupt its functioning. Id. It is unreasonable to construe Kansas corporation law as micro-managing the conduct, and nullifying the articles of incorporation, of nonstock corporations in the manner appellants urge. It was therefore not an abuse of discretion under Kansas law for the district court to grant the preliminary injunction against the defendants.

---

a greater number is required by this chapter, the articles of incorporation or bylaws.

-12-

Finally, we agree with the district court that appellants are "equitably estopped from claiming that [Kansas NECA] is not a Chapter of NECA." (I Appellants' App. at 490.) The district court correctly found that "[t]he Kansas Chapter has held itself out as a chapter of NECA for 55 years. During this period, it has used the name NECA in its name, sent a representative to the NECA Board of Governors, submitted proposals on behalf of the Chapter, and collected NECA dues and submitted them." (Id.) That evidence is undisputed, and the district court's consequent holding of equitable estoppel, irreproachable.

**B**

With respect to the "irreparable harm" factor, the district court likewise found for NECA. It cited several reasons to support its conclusion. First, it found that "[i]n recent months, the Chapter has been forced to deal with seemingly endless disputes, some petty and some of importance . . . that have made functioning extremely difficult." (Id. at 493.) It concluded that NECA had interests "in bringing order to one of its chapters[,] . . . in ensuring that the wishes of the majority of the membership are realized[,] . . . [and] in seeing that its chapters follow the requirements of its Constitution and Bylaws." (Id.) In addition, the district court cited evidence that defendants were "attempting to manipulate the bank account of the Chapter," and that the issuance of the preliminary injunction "will serve to protect the Chapter's assets." (Id. at 494.)

Based on our review of the record on appeal, we do not adjudge those preliminary factual findings to be "clearly erroneous." Johnson, 194 F.3d at 1155 (internal quotations and citations omitted).

## C

Finally, we agree fully with the findings of the district court that the injury to NECA outweighs any injury to defendants and the grant of the preliminary injunction is not adverse to the public interest. We therefore adopt the district court's analysis of those issues in its entirety.

## IV

After reviewing the foregoing conditions for granting the preliminary injunction, we hold that NECA has met its heightened burden of showing that on balance the factors "weigh heavily and compellingly" in its favor. SCFC ILC, Inc., 936 F.2d at 1098-99. The judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge